## Beyerle *et al.* *versus* Hain *et al.*

1. Waid had been elected treasurer of a society annually for a number of years. He was elected in 1861, the treasurer's book showing a balance then in his hands: he gave bond with sureties to deliver at the expiration of his term all moneys, &c., in his hands; he resigned, having received since his last election less money than he paid out during the same time, but from moneys previously received there was a balance against him. *Held,* that the sureties were liable on the bond at the suit of the society.

2. Evidence that Waid had given adequate sureties, none of whom were those on last bond, for each of the prior years, was inadmissible.

3. Evidence that at the date of the last bond Waid was insolvent, that the sureties were not informed of the balance in his hands and that it was known to the society, was inadmissible.

4. The plaintiffs were not bound to inform the sureties of the amount with which Waid stood charged unless asked.

5. In the absence of evidence to show that Waid had used the funds improperly, the presumption was that they were in his hands when the bond was given.

6. Judgment on a verdict need not be entered in open court, but may be entered by the prothonotary in vacation on producing the receipt for the verdict fee.

March 1st 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Berks county*: No. 115, to January Term 1866.

This was an amicable action of debt entered June 30th 1862, between Peret Hain and others, trustees of Hebron Encampment of Odd Fellows, plaintiffs, and Adam Waid, treasurer of the en-

[Beyèrle v. Hain.]

campment, and Daniel Beyerle and others, his sureties, on Waid's official bond, defendants.

The by-laws of the encampment provided: "The treasurer shall receive all money collected by the scribe. He shall have charge of the uninvested funds, and the evidence of all investments. He shall, when in funds, at sight pay all orders drawn on him by the encampment, signed in legal form. He shall keep a correct account of all money received and orders paid, and be at all times prepared to show the balance in his hands. At the expiration of his term of office, and when a successor has been elected and installed, he shall deliver to him all money, evidence of investments, books, papers and vouchers belonging to the office, in his hands. Before entering on the duties of treasurer he shall give such security as the encampment may require."

. Waid was elected treasurer of the encampment on the 10th of June 1853, and annually thereafter until 1861, inclusive. In that year he was elected, June 14th, and on the 27th of July he and his sureties entered into the bond in suit. The bond is in the penal sum of $1500, with condition "that the said Adam Waid does well and truly pay all orders drawn on him by the said Hebron Encampment, signed by the C. P. and attested by the scribe, and in all other respects faithfully discharge the duties of the said office of treasurer, and at the expiration of his term of office, deliver over to his successor all moneys, books or papers that may be in his hands belonging to the said Hebron Encampment."

Waid was installed as treasurer August 9th 1861. The treasurer's book in Waid's handwriting, showed a balance in his hands, July 1st 1861, of $588.09, and also the following entries :—

"13th September 1861. Adam Waid, Dr. to balance
in hand, . . . . . . . $394 35
Received at sundry times from 13th September 1861 to
January 10th 1862, inclusive, . . . . 619 98

$1014 33
Credits from September 27th 1861 to January 10th
1862, . . . . . . . . 607 67

406 66

CHARITY FUND.

September 1861. Bal. in hands, . . $96 85
Credits from September 27th 1861 to January
10th 1862, . . . . . 71 00 25 85

$432 51"

Waid resigned his office as treasurer, and his resignation was

[*Beyerle v. Hain.*]

accepted February 14th 1862.   Mathias Mengel was elected his successor and installed March 14th.   The suit was brought to recover the balance above stated, with interest.

The defendants gave in evidence from the treasurer's book his accounts for several years previously to 1861, and then offered "to prove that Adam Waid gave bond with adequate security in each year before the present bond was given—no one of the sureties in this bond having been party to any former bond."

Also, "that at the date of bond in suit, Adam Waid was insolvent, and had been so a year previously.   And also to prove that it was not made known to the sureties that Adam Waid was charged on the books as treasurer with $588.09 when bond was given, and that it was known to plaintiffs."

Both offers were rejected and several bills of exceptions sealed.

The court (Woodward, P. J.), after recapitulating the evidence, charged, amongst other things :—

["The accounts in evidence show that on the 13th of September 1861, the balance in the hands of Waid was $491.20. He charged himself upon that date with this sum as standing to the credit of the encampment.   The ground is now taken on the part of the defendants, that there should be no recovery against the sureties, because the treasurer paid out from that time to the 10th of January 1862, more money than he received.   A point has been made to the jury that under the evidence, it ought to be found that, so far as the sums received and the sums paid correspond in amounts, the treasurer paid out the identical money that was paid to him. The court believe that the evidence would justify such a finding by the jury, and they will dispose of the case as if the fact had been established by a verdict.   Upon the main question the opinion of the court is, that the entries of the 13th of September are to be taken as proving the balance due the encampment to have then been in the treasurer's hands.   There is no proof of any default made before the date of the bond in suit.   And there is nothing upon the record to show that he did not actually hold the moneys with which he charged himself after he entered upon his renewed term of office.   It would not be enough, in order to establish this, to prove that Mr. Waid was destitute of personal means.   In a question like this, evidence of the actual insolvency of a fiduciary agent would lead to no presumption of failure of duty in relation to his trust.   In the absence of countervailing testimony, the entries made by Waid are to be taken as establishing that the money charged to himself was in his hands subsequently to the execution of the bond.] * * *

[" The proposition that the bond does not cover any balances in the hands of Waid, for any year previous to that for which he was last elected, would be well founded if no such balance was actually in his hands when the bond was given.   If the money had been

[Beyerle *v.* Hain.]

embezzled or wasted before the 27th of July 1861, the sureties would be liable only for the amounts subsequently received. But the condition of the bond was for the surrender by the treasurer of all moneys in his hands at the expiration of his term of office.] The cases which have been read show that in every instance where there was default made by an accounting officer under an earlier appointment, his sureties were not held responsible for that default upon a new bond given after a subsequent appointment. All these cases, with a single exception, are distinguishable in their general features from the present one, for they grew out of the liabilities of officers bound to make periodical payments of moneys received, and in each of them the default had been made previous to the execution of the bond in suit. Here it was the treasurer's duty to retain the amounts paid to him. He was bound to pay all orders duly drawn, and to deliver the balance of the fund to his successor. The first default he is proved to have made occurred at the expiration of his term, and while the present obligation was in force. The exceptional authority alluded to is the case of The Commonwealth *v.* Baynton, 4 Dallas 282, and there neither the condition of the bond nor the character of the breach was disclosed in the report.

[" The court are of opinion that the claim in suit is within the plain words and intention of the covenants entered into by the defendants, and that the plaintiffs are entitled to a verdict."]

The verdict was for the plaintiffs for $514.11. The plaintiffs paid the verdict fee, and having exhibited the county treasurer's receipt for it to the prothonotary, he entered judgment on the verdict in vacation without notice to the defendants or their counsel. An execution was issued on the judgment and the court granted a rule to show cause why the judgment should not be vacated and the execution set aside, on the ground that the prothonotary had no right to enter judgment under the circumstances.

The court, after argument, discharged the rule.

The defendants (the sureties) took a writ of error and assigned for error:—

1 and 2. The rejection of their offers of evidence.

3, 4 and 5. The parts of the charge included in brackets.

6. Refusing to vacate the judgment and set aside the execution.

*H. W. Smith,* for plaintiffs in error.—The sureties are responsible only for money received by Waid during the year from August 1861: Weaver *v.* Shryock, 6 S. & R. 264; Bank of Washington *v.* Barrington, 2 Penna. R. 27; Ewer *v.* Tidcomb, 2 Vernon 518; Postmaster-General *v.* Reeder, 4 Wash. C. C. R. 678; Postmaster-General *v.* Norvell, Gilpin's R. 106; United States *v.* Patterson, 7 Cranch 575; Commonwealth *v.* Reitzel, 9 W. & S. 109; Commonwealth *v.* West, 1 Rawle 31; Armstrong

v. United States, Peters' C. C. R. 46; Commonwealth v. Baynton, 4 Dallas 282; Miller v. Commonwealth, 8 Barr 444; Manufacturers and Mech. Loan Co. v. Odd Fellows, 12 Wright 446; United States v. Bell, Gilpin 41. The judgment should have been vacated: Acts of March 29th 1805, § 13, 4 Sm. L. 242; April 4th 1809, 5 Sm. L. 59, Purd. 1005, pl. 2, and note *a.*; Cahill v. Benn, 6 Binn. 100; Ulrich v. Voneida, 1 Penna. R. 251; Act of February 1806, § 28, 4 Sm. L. 278, Purd. 577, pl. 32; Reed v. Hamet, 4 Watts 441; Lanning v. Pawson, 2 Wright 486; McCann v. Farley, 2 Casey 173; Britton v. Stanley, 1 Whart. 268.

*J. G. & C. H. Jones,* for defendants in error.—The sureties were bound: 1 Greenl. Ev., §§ 187–88; Huzzard v. Nagle, 4 Wright 178; 2 Starkie 776–77, notes *g* and *h*; Whitnash v. George, 8 B. & C. 556; Goss v. Watlington, 3 B. & B. 132; Meade v. McDowell, 5 Binn. 195; Simonton v. Beecher, 2 W. C. C. R. 473; Commonwealth v. Kendig, 2 Barr 448; Reed v. Hamet, *supra.* The prothonotary has authority to sign all judgments: Act of April 14th 1834, § 77, Pamph. L. 355, Purd. 818, pl. 72; Maguire v. Burton, 1 Miles 18.

The opinion of the court was delivered, May 11th 1869, by

WILLIAMS, J.—This was an amicable action in debt upon a bond given to the trustees of Hebron Encampment by Adam Waid, as principal, and the other defendants below, as sureties, for the faithful discharge of his duties as treasurer, and for the delivery to his successor in office of all moneys, books or papers in his hands belonging to the encampment. He was first elected treasurer in 1853, and was annually re-elected thereafter until the 14th of June 1861, when he was again chosen for another year. He gave the bond in suit, as required by the by-laws, and was installed on the 9th of August 1861, and resigned a few days before the 14th of February 1862, at which time his resignation was accepted. The treasurer's book—the entries in which were admitted to be in the handwriting of the treasurer—showed, by a balance struck on the 1st of July, with which he then charged himself, that he had in his hands, when the bond was given, the sum of $588.09, the whole of which he had received prior to his last election. Another balance, struck on the 13th of September, with which he charged himself as of that date, showed that he had then in his hands the sum of $394.35 of the general fund, and $96.85 of the charity fund belonging to the encampment. The accounts show that, between the date of the bond and his resignation, he received from the scribe of the encampment, at different times, the sum of $863.90; and that he paid out during the same period the sum of

[Beyerle *v.* Hain.]

$1142.20; and that when he resigned he had in his hands $432.51, which he failed to pay over to his successor. The defendants denied their liability for his default, and offered to show: 1st. That he had given bond with adequate security for the previous years for which he had been elected and served as treasurer, and that none of the sureties in the bond in controversy were parties to any former bond.

2d. That he was insolvent at the date of the bond and had been so for a year before; and that the sureties were not informed, when the bond was given, that he stood charged on the book, as treasurer, with the sum of $588.09, when the fact was known by the plaintiffs. The court rejected the offers and their rejection constitutes the 1st and 2d assignments of error.

Ought the offers then to have been admitted, or were they properly rejected? If the facts stated in them would have constituted a defence to the action, if proved, they ought to have been admitted; but if not, they were properly rejected. That the treasurer had given bond with adequate security for the previous years he had served, and that none of the defendants were sureties therein, was wholly immaterial and irrelevant to the issue; and, if proved, would have constituted no defence. The plaintiffs were not seeking to recover for any default of the treasurer for the previous years, but for his failure to deliver over to his successor the moneys shown to be in his hands when he resigned his office. Whether the treasurer had or had not given any previous bond could have no possible bearing on the question of the defendants' liability for the default of the treasurer. And just as irrelevant, was the offer to prove that the treasurer was insolvent at the date of the bond, and that he had been so for a year; and that the sureties when they signed the bond were not informed that he stood charged on the treasurer's book with the sum of $588.09, though the fact was known by the plaintiffs. It must be presumed from the offer that the sureties knew that the treasurer was insolvent when they executed the bond, as the contrary is not alleged or offered to be shown. His insolvency might be a good reason for the plaintiffs demanding security, if the by-laws of the encampment had not required it, but it cannot possibly relieve the defendants from the liability they incurred in becoming his sureties. The plaintiffs were under no legal or moral obligation to inform them of the amount with which he stood charged on the treasurer's book, unless they were asked. It was no more their duty to inform the defendants of the amount in his hands, when the bond was given, than it was to inform them of the amount that would probably come into his hands during the year for which he was chosen. It is not alleged that they became the sureties of the treasurer at the instance or solicitation of the plaintiffs, or that the plaintiffs knew that they were to be his sureties until the

[Beyerle *v.* Hain.]

bond was presented for their approval. If the defendants had offered to show that the treasurer was an insolvent defaulter—that he had embezzled the moneys which he had received the previous year—and that he did not have the amount in his hands with which he stood charged on the treasurer's book when the bond was given; and that these facts were not known by them when they became his sureties, but were known by the plaintiffs, the offer might have been relevant and, if proved, have constituted a good defence to the action. But it was no part of the offer to show that the treasurer had not the funds in his hands with which he was charged on the book, nor was any fact offered to be shown from which such an inference could be fairly drawn. If he was actually insolvent, it does not follow that he had been guilty of embezzlement, nor would evidence of insolvency warrant the inference that he had appropriated the funds of the encampment to his own use. In the absence of any evidence tending to show that he had used the funds for an improper purpose, the presumption is that they were in his hands when the bond was given. And the fact that he paid out, between the date of the bond and his resignation, $278 more than he received, shows that he must have had the funds, or at least a portion of them, in his hands. There is not a particle of evidence that he had been guilty of any default before the bond was given, or that he was guilty of any default until after his surrender of the office. So long as he continued to act as treasurer he paid promptly all orders drawn on him by the encampment, and the first, and only default, which he is shown to have ֺmade, was in failing to deliver to his successor the moneys in his hands, at the expiration of his term, as required by the condition of his bond. There was then no error in rejecting the defendants' offers, nor do we see any error in the charge. Under the evidence the court rightly instructed the jury that the entries of the 13th of September are to be taken as proving that the balances due the encampment were then in the treasurer's hands, and that there was nothing upon the record to show that he did not actually hold the moneys with which he charged himself after he entered upon his renewed term of office; and that in the absence of countervailing testimony the entries made by the treasurer are to be taken as establishing that the money charged to himself was in his hands subsequently to the execution of the bond. And the court was clearly right in charging that the proposition—that this bond does not cover any balances in the hands of the treasurer for any year previous to that for which he was last elected—would be well founded, if no such balance was actually in his hands when the bond was given; and that if the money had been embezzled or wasted before the 27th of July 1861, the sureties would be liable only for the amounts subsequently received. Under the facts of this case, which are clearly and fairly stated in the charge, the

[Beyerle *v.* Hain.]

court was justified in giving a binding direction to the jury, and instructing them that the plaintiffs were entitled to a verdict. This disposes of all the errors assigned to the charge, and there is nothing of substance in the remaining specification. It was not necessary that the judgment should be entered on the verdict in open court. It was properly entered by the prothonotary in vacation, at the instance of the plaintiffs' attorneys, on producing the receipt for the payment of the jury fee. It was in accordance with the common and universal practice throughout the state, and it is too late now to question its propriety, even if the prothonotary was not expressly authorized, as he is by the Act of Assembly, to sign judgments.

Judgment affirmed.